THE STATE at the Relation and to the Use of
JAMES H. LAY, Prosecuting Attorney, v. MIS-
SOURI PACIFIC RAILWAY COMPANY, Ap-
pellant.

In Banc, July 2, 1914.

1. LOCOMOTIVES: Safety Devices: Act of 1913: No Specific
Allegations. A petition filed by the prosecuting attorney,
charging the defendant railroad company with having operated
a train in this State without having first equipped its engine
with the numerous devices prescribed by the Act of 1913, Laws
1913, p. 180, but charging no specific violation of said act, but
in general terms stating that the defendant did on June 23,
1913, "wilfully and unlawfully fail, neglect and refuse to com-
ply with the requirements of said sections 1 to 4 inclusive of
the act aforesaid" and nothing more, states no cause of action,
and a judgment based thereon cannot stand.

2. ——: ——: ——: ——: Constitutional Questions.
And said petition failing to state a cause of action, constitu-
tional objections to said act, though timely and properly made,
will not be considered, but the judgment will simply be reversed.

Appeal from Cole Circuit Court.- *Hon. J. G. Slate,*
Judge.

REVERSED.

*T. T. Railey, Corum & Williams* and *R. T. Railey*
for appellant.

*John T. Barker,* Attorney-General, and *W. T.
Rutherford,* Assistant Attorney-General, for respond-
ent.

WOODSON, J.—This suit was instituted in the
circuit court of Cole county by the prosecuting attor-
ney thereof against the defendant to recover certain
penalties prescribed by an act of the Legislature, en-
acted in 1913. [Laws 1913, pp. 180 and 181.]

A jury was waived, and the cause was submitted to the court in the manner presently to be mentioned, and the court found against the defendant, and imposed the minimum fine. After moving unsuccessfully for a new trial the defendant appealed.

The petition filed by the prosecuting attorney in the cause is in words and figures as follows:

"Plaintiff avers that on the 29th day of March, 1913, the Forty-Seventh General Assembly of the State of Missouri passed an act entitled: 'An Act relating to railroads, and providing for the health and safety of railroad employees; to prevent the use of dangerous and defective locomotive engines, prescribing the duties of certain officers and providing penalties for violations of the provisions hereof, and repealing inconsistent acts.'

"That said act became effective by operation of law on June —, 1913, it being more than ninety days from the adjournment of the Legislature aforesaid. That sections 1, 2, 3 and 4 of said act (Laws 1913, pp. 180 and 181) are in words and figures following:

" 'Section 1. *Locomotive engines, how equipped.* —It shall be unlawful for any person, firm or corporation, operating a steam railroad within this State, to use or permit to be used any steam locomotive engine, upon its line of road within the State, unless such locomotive engine be equipped with suitable elastic springs of sufficient strength to support the cab, boiler, fire box and appurtenances thereto connected, free, clear and independent, and in such a manner that no part of the boiler, cab or fire box, or appurtenances thereto, shall strike or rest upon the top of any driving box, truck or trailer box of such locomotive engine; that such springs shall be free and unretarded and of sufficient strength and elasticity to prevent the shock occasioned by the running of such locomotive engine over irregularities in the track, from being com-

municated to the boiler, fire box, cab and the machinery thereto connected.

" 'Section 2. *Lateral motion of driving box, etc.*— It shall be unlawful for any firm, person or corporation, operating a steam railroad within this State, to use or permit to be used any steam locomotive engine in the service of hauling passengers or freight between stations within this State, whenever the lateral motion in any driving box, truck box, or trailer box, shall exceed one inch, or the combined lateral wear on any two boxes on any one shaft of such locomotive engine exceeds the sum of one inch.

" 'Section 3. *Cabs, running boards, etc.*—It shall be unlawful for any person, firm or corporation, operating a steam railroad within this State to use or permit to be used·any locomotive engine within this State unless the cab and running boards shall be firmly and securely anchored and fastened to the boiler of such locomotive engine in such a manner as to prevent any vibration to such cab or running boards, independent of the boiler thereof while said locomotive engine is in motion, and unless the braces, brackets and fastenings, connected with such cab and running boards are so securely anchored and fastened to the boiler of such locomotive engine in such a manner as to prevent the vibration ·thereof while such locomotive engine is in motion. ·

" 'Section 4. *Valves, cocks, unions, couplings, etc.* —It shall be unlawful for any person, firm or corporation, operating a line of steam railroad within this State, to use or permit to be used within the State of Missouri, any steam locomotive engine, unless the valves, cocks, unions, couplings, pistons, pipes, steam chests and other appliances connected with such locomotive engines and used for holding or conducting steam shall be so constructed and maintained as to prevent the escape of steam within the cab or the escape of steam without the cab in such quantity or vol-

ume as will obstruct the vision of either the engineer or fireman thereon.'

"Plaintiff avers that on the said twenty-third day of June, 1913, after the above act had become effective by operation of law as aforesaid, defendant operated through said county of Cole and State of Missouri one of its passenger locomotive engines attached to a passenger train which left St. Louis, Missouri, at nine o'clock a. m., on said day, bound for Kansas City, Missouri, and which said engine passed through said Cole county, Missouri, without said engine having been supplied and rigged with suitable elastic springs or any of the other improvements required by said sections 1, 2, 3 and 4, of the act aforesaid, and without which it was unlawful to operate said locomotive engine at the time and place aforesaid.

"That sections 9 and 10 of said act provide as follows:

" 'Section 9. *Penalty.*—Any person, firm or corporation, whether owner, lessee, assignee or receiver, operating a line of railroad in whole or in part in this State, violating any of the provisions of this act shall be subject to a penalty of not less than twenty-five dollars, nor more than five hundred dollars for each and every violation of this act, to be collected by a civil action to be brought in the name of the State of Missouri at the relation of the prosecuting attorney of any county through which such road may run or the circuit attorney of the city of St. Louis if such road shall enter such city, and the court shall tax a reasonable attorney's fee in favor of such prosecuting officer as other costs in the case: *Provided,* this act shall not apply to any person, firm or corporation operating a line of railroad in whole or in part in this State who or which is unable to comply with any of the provisions hereof, by reason of storms, floods, or other calamitous visitations, but the burden of proof of such fact or facts shall be upon such person, firm or corporation.

" 'Sec. 10. *Repealing conflicting acts.*—All acts and parts of acts which are in conflict with this act are hereby repealed.''

"Plaintiff avers that on said twenty-third day of June, 1913, said defendant, in the county of Cole and State of Missouri, did wilfully and unlawfully fail, neglect and refuse to comply with any of the requirements of said sections 1 to 4, inclusive, of the act aforesaid, while operating said locomotive engine through the county of Cole aforesaid on the date aforesaid, and which said engine at the time and place aforesaid contained none of the improvements provided for and required by said sections 1 to 4, inclusive, or either of them.

"Wherefore, plaintiff prays judgment against said defendant, for the sum of five hundred dollars penalty, together with its costs herein, and a reasonable attorney's fee to be taxed by the court.''

Thereafter, on the fourth day of August, 1913, appellant filed its amended answer, which was very lengthy, setting up various acts of Congress, enacted under the commerce clause of the Constitution of the United States, and certain other provisions of that venerable instrument, as well as a number from the Constitution of Missouri. The substance of the answer is thus stated by learned counsel for the appellant, viz:

"Appellant at the times mentioned in the petition, and for many years prior thereto, was duly organized and doing business under the laws of Missouri, as a railroad corporation, and was during all of said period engaged as a common carrier of both passenger and freight. Said appellant was likewise during all of said period engaged in interstate and intrastate commerce, both as to freight and passengers, and its lines

extended from Missouri into Arkansas, Nebraska, Col-·
orado, Oklahoma and other States.

"On said twenty-third day of June, 1913, appel-
lant was operating in Missouri two hundred and two
freight engines, one hundred and seven passenger en-
gines and forty-five switch engines, all of which were,
during all of the period aforesaid, either directly or
indirectly engaged in interstate commerce.

"On June 23, 1913, said respondent, J. H. Lay,
as prosecuting attorney of Cole county—a county
through which appellant's line of road runs—com-
menced an action in the circuit court of said county,
before J. G. Slate, as judge thereof, to recover a pen-
alty of five hundred dollars from appellant for an al-
leged violation of the act above mentioned, in that
appellant failed to provide its engine running through
said county, on the date aforesaid, with the equipments
called for by said act.

"Appellant was duly served with process in said
cause, and filed an answer therein. Thereafter, an
amended answer was filed, in which all of the facts set
up in plaintiff's petition were specifically admitted to
be true. It was likewise admitted that defendant's said
locomotive was not equipped with all of the require-
ments of sections 1 to 4, inclusive, of said act. Said
amended answer then set out at length various matters
of defense, in which the constitutionality of said Act
of 1913 was attacked on the ground that it was in
conflict with various provisions of the Missouri and
Federal constitutions, and likewise in conflict with va
rious provisions of the Federal laws.

"Plaintiff's counsel filed a motion for judgment
on the pleadings, on the theory that the facts pleaded
in said amended answer, even if true, constituted no
defense in the case. The trial court sustained plain-
tiff's motion for judgment on the pleadings, and en-
tered judgment in behalf of plaintiff for a penalty of

twenty-five dollars, together with twenty-five dollars attorney's fees.''

I.   There is no question but that this court has jurisdiction of the cause, because of the numerous State and Federal constitutional questions involved; yet we decline to pass upon any of them for the reason that the petition states no cause of action against the defendant, for the reason to be presently stated. By reading the Act of the Legislature set forth in the petition, it will be seen it requires the defendant to do numerous things, or rather prohibits it from operating a railroad in this State, after the date stated, without first equipping its engines with the numerous safety devices therein mentioned.

By reading the petition it will be seen that it charges the defendant *with no specific violation* of the act or any section thereof, but in general terms states that the defendant did on the twenty-third day of June, 1913, ''wilfully and unlawfully fail, neglect and refuse to comply with any of the requirements of said sections 1 to 4 inclusive of the act aforesaid, while operating said locomotive engine through the county of Cole aforesaid,'' etc.

This petition clearly states no cause of action against the defendant because it does not inform the defendant with what specific wrong it is charged. Section 1794, Revised Statutes 1909, provides among other things: ''Second, a plain and concise statement of the facts constituting a cause of action, without unnecessary repetition.''

The petition in this case in no manner complies with this section of the statute. It might as well be said, in a suit against the defendant for personal injuries, that a petition which simply charges that the defendant violated ''The Fellow Servant Act,'' ''The Damage Act,'' and all of the common law of negligence, would state a good cause of action. Such a pe-

tition would be a monstrosity in pleadings. Again by parity of reasoning, and with equal propriety, it might be said that an indictment charging the defendant with being guilty of all of the statutory and common-law crimes of the State would be a valid charge under the Constitution and laws of this State. Neither would be valid, nor does the petition in this case state facts sufficient to constitute a cause of action against the defendant, independent of the constitutional questions presented in the answer. This is too plain for argument.

Entertaining these views, we believe the judgment of the circuit court should be reversed, without considering or passing upon any issue, of law or fact, presented or attempted to be presented by the pleadings, except the sole one that the petition does not state facts sufficient to constitute a cause of action against the defendant. So believing, the judgment of the circuit court is reversed and judgment is here rendered for the defendant.

All concur, except *Graves* and *Bond, JJ.,* who dissent; *Faris, J.,* concurs in result.